UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:23-cr-00155-TWP-MJD |
| | ) | |
| GREGORY SMITH, | ) | -01 |
| | ) | |
| Defendant. | ) | |

**ORDER DENYING DEFENDANT'S MOTION TO DISMISS INDICTMENT**

This matter is before the Court on Defendant Gregory Smith's ("Smith") Motion to Dismiss the Indictment (Filing No. 75). On October 18, 2023 a federal grand jury indicted Smith on one count of Unlawful Possession of a Firearm by a Convicted Felon in violation of 18 U.S.C. § 922(g)(1) (Filing No. 18 at 1). Smith moves to dismiss the indictment on the grounds that Section 922(g)(1) violates the Second Amendment to the U.S. Constitution. For the reasons discussed below, the Motion is **denied**.

I.      BACKGROUND

The following facts are not necessarily objectively true. However, on a Motion to Dismiss an Indictment, the Court takes all well-pleaded allegations as true and views them in the light most favorable to the government. *United States v. Yashar*, 166 F.3d 873, 880 (7th Cir. 1999).

Smith was convicted of Robbery in 2005 (Filing No. 54 at 7). He received a sentence of 20 years but served less than eight years. *Id*. Smith was rearrested in 2014 and convicted of misdemeanor criminal confinement of his girlfriend at the time. *Id*. at 8.

On September 18, 2023, officers from the Indianapolis Metropolitan Police Department ("IMPD") responded to a residence on East 36th Street based on a 911 call reporting that a male

had fired multiple gunshots at his wife in the middle of the street ([Filing No. 1 at 3](Filing No. 1 at 3)). The 911 caller also stated, "There's domestic violence and guns involved. He done shot the gun. He just shot at my daughter." *Id*. The caller identified the suspect as a Black male wearing a black tank top. *Id*. A gunshot can also be heard in the background of the 911 call. *Id*.

When officers arrived at the residence, they observed a black Chevrolet Impala in the driveway. *Id*. A Black male wearing a black tank top, later identified as Smith, got out of the driver's seat holding a seven-year-old child. *Id*. Smith let the child go but initially refused to comply with officers' commands yelling that he would not go back to prison, and that officers should shoot him. *Id*. After about five minutes, Smith complied with officers' commands and was taken into custody. *Id*.

Officers interviewed Smith's wife ("Wife") after the incident who stated that the couple began arguing about their relationship when she told Smith she was going to leave. *Id*. at 4. She alleges that Smith then went into the garage and fired a gunshot before telling her that he shot her tire so she couldn't leave. *Id*. Wife then told officers that Smith grabbed her and threw her across the room before her mother and 18-year-old son intervened. *Id*.

With the intervention of her son and mother, Wife stated that she was able to get away from Smith and ran out of the residence. *Id*. As she ran towards a neighbor's house across the street, Wife alleges that she heard gunshots before turning around and seeing Smith pointing a gun at her. *Id*. Wife's son then came outside before Smith allegedly shoved him and Wife to the ground. *Id*. Wife stated that Smith then went inside and got her and Smith's seven-year-old daughter and put her in the back of the black Impala. *Id*. Smith then began pulling out of the driveway with their daughter in the back seat as officers arrived on the scene. *Id*.

Once Smith was in custody, officers obtained a warrant to search Smith's Impala. *Id*. at 3. Officers then found a black Sig Sauer P365 9 mm semiautomatic handgun underneath the driver's seat where Smith had been sitting. *Id*. Officers also recovered four spent 9 mm shell casings from the driveway and the surrounding area. *Id*. On October 18, 2023, Smith was charged with Unlawful Possession of a Firearm by a Convicted Felon in violation of 18 U.S.C. § 922(g)(1). *Id*. at 3.

Smith moves to dismiss the indictment arguing that Section 922(g)(1) is unconstitutional, both facially and as applied in this case, thus violating his Second Amendment rights (Filing No. 76 at 3).

## II.    LEGAL STANDARD

Federal Rule of Criminal Procedure 12(b)(1) provides that a "party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits." Fed. R. Crim. Proc. 12(b)(1). When considering a motion to dismiss a criminal indictment, the court assumes that the indictment's factual allegations are true and must "view all facts in the light most favorable to the government." *Yashar*, 166 F.3d at 880.  A constitutional challenge to a statute can be brought either as a facial challenge, or an as-applied challenge. To succeed on a facial challenge to the constitutionality of a statute, the moving party must show that the statute is unconstitutional in all applications. *City of L.A. v. Patel*, 576 U.S. 409, 415 (2015). To succeed on an as-applied challenge, the moving party must show the statute is unconstitutional because of the way it was applied to the particular facts of their case. *See United States v. Phillips*, 645 F.3d 859, 863 (7th Cir. 2011).

## III.    DISCUSSION

The Second Amendment reads: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const.

amend. II. The right to bear arms is one of the "fundamental rights necessary to our system of ordered liberty." *McDonald v. Chicago*, 561 U.S. 742, 778 (2010). "Derived from English practice and codified in the Second Amendment, the right secures for Americans a means of self-defense." *United States v. Rahimi*, 602 U.S. 680, 690 (2024) (citing *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1, 17 (2022)). However, "the right secured by the Second Amendment is not unlimited." *District of Columbia v. Heller*, 554 U.S. 570, 626 (2008). "From Blackstone through the 19th-century cases, commentators and courts routinely explained that the right was not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." *Id*.

In *Heller*, the United States Supreme Court began its analysis of the right with the "constitutional text and history." *See Bruen*, 597 U.S. at 22. "In *Bruen*, [the Supreme Court] directed courts to examine our 'historical tradition of firearm regulation' to help delineate the contours of the right." *Rahimi*, 602 U.S. at 691 (quoting *Bruen*, 597 U.S. at 17). The Supreme Court further explained that "if a challenged regulation fits within that tradition, it is lawful under the Second Amendment." *Id*. Though, the Government "bears the burden to 'justify its regulation.'" *Id*. (quoting *Bruen* 597 U.S. at 24).

The united States Supreme Court clarified in *Rahimi* that its recent Second Amendment cases such as *Heller* and *Bruen* were misunderstood by some courts, stating "[t]hese precedents were not meant to suggest a law trapped in amber." *Id*. Instead, "the Second Amendment permits more than just those regulations identical to ones that could be found in 1791. Holding otherwise would be as mistaken as applying the protections of the right only to muskets and sabers." *Id*. at 691–92.

"[T]he appropriate analysis involves considering whether the challenged regulation is consistent with the principles that underpin our regulatory tradition." *Id*. at 692. "A court must

4

ascertain whether the new law is 'relatively similar' to laws that our tradition is understood to permit, 'apply[ing] faithfully the balance struck by the founding generation to modern circumstances.'" *Id*. (quoting *Bruen*, 597 U.S. at 29) (alteration in original).

"Why and how the regulation burdens the right are central to this inquiry." *Id*. Even "when a challenged regulation does not precisely match its historical precursors, 'it still may be analogous enough to pass constitutional muster.' The law must comport with the principles underlying the Second Amendment, but it need not be a 'dead ringer' or a 'historical twin.'" *Id*. (quoting *Bruen*, 597 U.S. at 30).

Assessing Smith's challenge with these principles in mind, the Court concludes that Section 922(g)(1) survives Smith's challenge both facially and as applied.

A.  **Section 922(g)(1) is Constitutional on its face**

For Smith's facial challenge to succeed, he must "establish that no set of circumstances exists under which the Act would be valid." *United States v. Salerno*, 481 U.S. 739, 745 (1987). Accordingly, the Government need only demonstrate that Section 922(g)(1) is constitutional in some of its applications. The Court finds that the Government has satisfied this burden.

The Court's analysis begins with the binding precedent from the Seventh Circuit's decision in *United States v. Gay*, 98 F.4th 843 (7th Cir. 2024) (Filing No. 81 at 3). In *Gay*, the Seventh Circuit rejected a challenge to Section 922(g)(1) by an individual convicted of twenty-two felonies, including aggravated battery of a peace officer and possessing a weapon in prison. 98 F.4th at 847. The Seventh Circuit held that the argument Smith now asserts, that the Second Amendment permits convicted felons to possess firearms, is "hard to square with *Heller*." *Id*. at 846. "[I]n the course of holding that the Second Amendment creates personal rights [the Supreme Court in *Heller*] pointedly stated that 'longstanding prohibitions on the possession of firearms by felons' are valid."

5

*Id*. (quoting *Heller*, 554 U.S. at 626). The Seventh Circuit also relied on *McDonald*, in which the Supreme Court repeated the assurance that the "prohibitions on the possession of firearms by felons" are valid. 561 U.S. at 786. Finally, in *Rahimi*, the Supreme Court once again endorsed the presumptive constitutionality of the prohibition on felons possessing firearms. 602 U.S. at 699 ("*Heller* never established a categorical rule that the Constitution prohibits regulations that forbid firearm possession in the home. In fact, our opinion stated that many such prohibitions, like those on the possession of firearms by 'felons and the mentally ill,' are 'presumptively lawful.'") (quoting *Heller*, 554 U.S. at 626–27).

Smith argues that pursuant to *Bruen* and *Heller*, the Government bears the burden to show founding-era laws that are "distinctly similar" to Section 922(g)(1), not just "relevantly similar." (Filing No. 76 at 11). Smith then contends that the nation's history under either framework renders Section 922(g)(1) unconstitutional. The Court disagrees.

As discussed above, *Rahimi* explicitly states that the test is "whether the new law is 'relevantly similar' to laws that our tradition is understood to permit, 'apply[ing] faithfully the balance struck by the founding generation to modern circumstances.'" 602 U.S. at 692 (quoting *Bruen*, 597 U.S. at 29) (alteration in original). However, the Court need not delve too deep into the historical arguments as the Seventh Circuit's binding precedent in *Gay* forecloses any facial invalidation of Section 922(g)(1) under the Second Amendment. *United States v. Richmond*, No. 21-CR-152, 2024 U.S. Dist. LEXIS 170175, at *7-8 (N.D. Ill. Sept. 20, 2024). Moreover, "[a]s numerous lower courts have observed, *Rahimi* reinforces the conclusion that [Section] 922(g)(1) remains consistent with the Second Amendment." *Id*. at *9–10 (collecting cases). Accordingly, *Rahimi* and *Gay* make clear that Section 922(g)(1) is constitutionally valid on its face.

Given the Seventh Circuit's holding in *Gay*, a historical review seems unnecessary. However, in the interest of thoroughness, the Court finds that the Government has presented sufficient evidence that Section 922(g)(1) is relevantly similar to laws our tradition is understood to permit.

The Government first points the Court to *Kanter v. Barr*, where the Seventh Circuit stated that it has "suggested that felons were not historically understood to have Second Amendment rights." 919 F.3d 437, 445 (7th Cir. 2019). In reviewing the history of the Second Amendment in *Kanter*, the Seventh Circuit stated that "most scholars of the Second Amendment agree that the right to bear arms was tied to the concept of a virtuous citizenry and that, accordingly, the government could disarm unvirtuous citizens, including felons." *Id*. at 446 (internal quotation marks and citations omitted).

The Government next points the Court to *United States v. Skoien*, 614 F.3d 638 (7th Cir. 2010). In *Skoien*, the Seventh Circuit cited *Heller's* identification of the "highly influential" Dissent of the Minority from the Pennsylvania ratifying convention. *Id*. at 640 (quoting *Heller*, 554 U.S. at 604). "The [Dissent] asserted that citizens have a personal right to bear arms unless for crimes committed, or real danger of public injury." *Id*. In *Skoien*, the Seventh Circuit also observed that "[m]any of the states, whose own constitutions entitled their citizens to be armed, did not extend this right to persons convicted of crime." *Id*. (citing Stephen P. Halbrook, *The Founders' Second Amendment* 273 (2008), and C. Kevin Marshall, *Why Can't Martha Stewart Have a Gun?*, 32 Harv. J.L & Pub. Policy 695, 700-13 (2009)) (alteration in original).

Finally, the Government cites the Eighth Circuit's decision in *United States v. Jackson*, 69 F.4th 495 (8th Cir. 2023), *vacated by Jackson v. United States*, 2024 U.S LEXIS 2904 (2024). In *Jackson*, the Eight Circuit noted that early legislatures "authorized punishments that subsumed

7

disarmament—death or forfeiture of a perpetrator's entire estate—for non-violent offenses involving deceit and wrongful taking of property." *Id*. at 503 (citing *An Act for the Punishment of Certain Crimes Against the United States*, Pub. L. No. 1-9, § 14, 1 Stat. 112, 115 (1790); Act of Feb. 21, 1788, ch. 37, 1788 N.Y. Laws 664-65; Act of May 1777, ch. XI, 9 *The Statutes at Large; Being a Collection of all the Laws of Virginia* 302-03 (1821); *A Digest of the Laws of Maryland* 255-56 (1799); Stuart Banner, *The Death Penalty: An American History* 3, 18, 23 (2002); John D. Bessler, *Cruel & Unusual: The American Death Penalty and the Founders' Eighth Amendment* 56-57 (2012); Kathryn Preyer, *Penal Measures in the American Colonies: An Overview*, 26 Am. J. Legal Hist. 326, 330-32, 342, 344-47 (1982)). While *Jackson* was vacated for further consideration in light of *Rahimi*, *see Jackson*, 2024 U.S. LEXIS 2904, on remand, the Eighth Circuit once again held that Section 922(g)(1) was constitutional both on its face and as applied based on the historical citations above. *See United States v. Jackson*, 110 F.4th 1120, 1126-27 (8th Cir. 2024). Indeed, as stated by the D.C. Circuit, "it is difficult to conclude that the public, in 1791, would have understood someone facing death and estate forfeiture to be within the scope of those entitled to possess arms." *Medina v. Whitaker*, 913 F.3d 152, 158 (D.C. Cir. 2019).

This historical record shows that legislatures had traditionally had the ability to prevent categories of people from possessing firearms to address a danger of misuse. The Court is therefore satisfied that Section 922(g)(1) comports with our nation's history of firearm regulation. Due to this, along with the binding precedent in *Gay*, Section 922(g)(1) is constitutional on its face.

**B.**     **Section 922(g)(1) is Constitutional as applied to Smith**

Smith also challenges Section 922(g)(1) as applied (Filing No. 76 at 25). To succeed on an as applied challenge, Smith must show that Section 922(g)(1) is unconstitutional as applied to the

facts of his case. *Phillips*, 645 F.3d at 863. Therefore, the Government must provide the Court with a sufficient history of our nation preventing individuals like Smith from possessing firearms.

The Government reiterates its historical analysis discussed above and provides a brief overview of the relevant history it contends causes Smith's case to be unavailing (Filing No. 81 at 12). The Government begins by arguing that "the Supreme Court recognized that the nation's 'tradition of firearm regulation allows the Government to disarm individuals who present a credible threat to the physical safety of others.'" *Id*. (quoting *Rahimi*, 602 U.S. at 700). The Supreme Court "did 'not suggest that the Second Amendment prohibits the enactment of laws banning the possession of guns by categories of persons thought by a legislature to present a special danger of misuse.'" *Id*. (quoting *Rahimi*, 597 at 682). The Government then points the Court to the 1662 Militia Act which empowered the government to "seize all arms in the custody or possession of any person" who was "judge[d] dangerous to the Peace of the Kingdom." Militia Act 1662, 13 & 14 Car. 2, c. 3, § 13 (Eng.). The Government once again discusses the Dissent of the Minority in the Pennsylvania Ratifying Convention which stated that "no law shall be passed for disarming the people or any of them unless for crimes committed, or real danger of public injury from individuals." 2 Bernard Schwartz, *The Bill of Rights: A Documentary History 665* (1971). As stated previously, this Dissent was "highly influential" on the Bill of Rights. *Heller*, U.S. at 604.

Smith argues that the Third Circuit held that Section 922(g)(1) was unconstitutional as applied to those convicted of certain less serious offenses—corrupting a minor and carrying a handgun without a license (Filing No. 76 at 26 (citing *Binderup v. Att'y Gen.*, 836 F.3d 336, 368 (3d Cir. 2016) (en banc) (Hardiman, J., concurring), *overruled by Range v. Attorney General*, 69 F.4th 96, 99-100 (3d Cir. 2023)). Smith further contends that *Range* acknowledged an absence of

historical evidence to support disarming felons at all. *Id*. Finally, Smith argues the remoteness of his predicate felony does not suggest that he is particularly dangerous. *Id*.

Smith's arguments are unpersuasive.

In deciding that Section 922(g)(1) is constitutional as applied to Smith, the Court acknowledges that *Gay* left open the possibility that there is "some room for as-applied challenges" for individuals "whose most serious conviction is for a non-violent crime that did not lead to even one day in prison." 98 F.4th at 847 (citing *Range*, 69 F.4th 96). However, contrary to Smith's assertions, the evidence here indicates that he is a great distance from being an individual whose most serious crime is a non-violent crime that did not lead to even one day in prison.

At the time of the charged offense, Smith had a prior conviction for Robbery which is a violent felony. *See United States v. Duncan*, 833 F.3d 751, 755 (7th Cir. 2016) ("The relevant holding of *Lewis*—that any conviction under Indiana Code § 35-42-5-1 qualifies as a crime of violence under the elements clause and is thus a violent felony—remains good law.") (citing *United States v. Lewis*, 405 F.3d 511, 514 (7th Cir. 2005)). The probable cause affidavit for the conviction states that Smith beat a woman so badly with his fists, feet, and a fire extinguisher that her jaw had to be surgically wired shut as a result of the fractures from the attack. Probable Cause Affidavit, *State of Indiana v. Gregory Smith*, 49G02-0405-FA-078642 (Ind. Super. Jan. 5, 2005) (filed May 18, 2004). Smith spent just over seven years in prison for this offense before being paroled in February 2012 (Filing No. 54 at 7). He was released from parole on February 2, 2014. *Id*. Then, four and a half months later, he was arrested for the offense of criminal confinement of his then girlfriend. *Id*. at 7-8. The probable cause affidavit for that offense states that Smith held his girlfriend down and choked her in front of their children causing red marks to appear on her face and throat and red spots to appear in both of her eyes (Filing No. 15-4 at 1). These circumstances

lead to the conclusion that Section 922(g)(1) is constitutional as applied to Smith. *See United States v. Holden*, 70 F.4th 1015, 1017-18 (7th Cir. 2023) ("Governments may keep firearms out of the hands of dangerous people who are apt to misuse them . . . [including] the sort of person who cannot be trusted with guns (say, someone under indictment for using violence against a domestic partner)[.]") (citing *Bruen*, 597 U.S. at 26).

The Court's decision today is further bolstered by the fact that Smith is now alleged to have used a firearm to shoot at and threaten his wife and her children. Accordingly, it is not mere speculation that Smith might misuse a firearm—he allegedly did so, which ultimately led to his indictment in this case. Smith's case is the quintessential case Section 922(g)(1) aims at preventing—an individual convicted of a violent felony misusing a firearm to endanger others.

Moreover, some of the cases Smith relies on in his briefing for the proposition that non-violent felons may possess firearms, such as *Range* and *United States v. Duarte*, 101 F.4th 657 (9th Cir. 2024), are neither binding on this Court nor remain good law as both decisions have been vacated in light of *Rahimi*. *See United States v. Duarte*, 108 F.4th 786 (9th Cir. 2024); *see also Garland v. Range*, 2024 U.S. LEXIS 2917 (2024). Even if these cases were good law, Smith would not prevail. As the evidence cited above indicates, Smith was convicted of a violent felony, spent more than seven years in prison, and then when released, was convicted of using violence against his girlfriend at the time. Therefore, Smith is distinguishable from the non-violent offenders in *Range* and *Duarte*.

Finally, Smith's argument that his predicate felony does not suggest that he is particularly dangerous is clearly contradicted by both the crime committed and the circumstances surrounding the crime. Smith was convicted of Robbery. As stated above, such a conviction constitutes a crime of violence and is thus a violent felony. *Duncan*, 833 F.3d at 755. Further, during the commission

of this felony, Smith allegedly punched a woman in the face, knocked her down, kicked her in the face and body, and then used a fire extinguisher to hit her in the face resulting in multiple fractures to her jaw causing her to have her jaw wired shut. Accordingly, the crime and the acts leading to his conviction indicate that Smith is a dangerous individual.

The Court finds that the Government has satisfied its burden and Section 922(g)(1) is therefore constitutional against Smith. The Court's decision is furthered by the plethora of post-*Bruen* decisions from sister courts in this circuit finding Section 922(g)(1) constitutional, even if in varying forms. *See United States v. Regalado*, 709 F. Supp. 3d 619, 633–34 (N.D. Ind. 2023) (collecting cases). And, even if Section 922(g)(1) is constitutional only as to dangerous felons, those felons need not have actually engaged in violence. Instead, their past conduct need only demonstrate a "proclivity for violence" or "risk of public injury." *Kanter*, 919 F.3d at 451, 456 (Barrett, J., dissenting); *see also United States v. Stringer*, 742 F. Supp. 3d 840, 850-55 (C.D. Ill. 2024).

Whether *Gay* and *Rahimi* leave room for some as-applied challenges for felons convicted of non-violent crimes who served no jail time is an argument for another case with different facts. However, *Gay* and *Rahimi* make clear the Section 922(g)(1) is constitutional as applied to Smith. Accordingly, Smith's Motion to Dismiss the Indictment is **denied**.

### IV.  CONCLUSION

Under *Rahimi*, the Government bears the burden to show that Section 922(g)(1) is relevantly similar to laws our tradition is understood to permit. 602 U.S. at 692. Here, the Government has made such a showing. Section 922(g)(1) is consistent with our historical traditions. Section 922(g)(1) is therefore constitutionally valid on its face. It is also constitutional

as applied to Smith. For the reasons explained above, Smith's Motion to Dismiss the Indictment (Filing No. 75) is **DENIED**.

    **SO ORDERED**.

Date:   5/29/2025

                                      Hon. Tanya Walton Pratt, Chief Judge
                                      United States District Court
                                      Southern District of Indiana

Distribution:

Kelsey Massa
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
kelsey.massa@usdoj.gov

Leslie D. Wine
INDIANA FEDERAL COMMUNITY DEFENDERS
leslie_wine@fd.org